UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY HART | § | |
| | § | |
| Plaintiff, | § | Civil Action No.  4:18-cv-00504 |
| INTERCONTINENTAL | § | Jury Demanded |
| TERMINALS COMPANY, LLC, | § | |
| BRENT WEBER & CARL HOLLEY | § | |
| | § | |
| Defendant. | | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Mary Hart files her Second Amended Complaint against Defendants Intercontinental Terminals Company, LLC ("ITC"), Brent Weber and Carl Holley and in support would show as follows:

## PARTIES

1.      Plaintiff Mary Hart is an individual residing in Harris County, Texas.

2.      Defendant ITC is a Delaware corporation with its principal place of business in Harris County, Texas.  ITC has appeared and answered.

3.      Brent Weber is an individual who may be served at his place of employment, Intercontinental Terminals, LLC at 1943 Independence Parkway South, La Porte, Texas 77571 or 1030 Ethyl Road, Pasadena, Texas 77503.

4.      Carl Holley is an individual is an individual who may be served at his place of employment, Intercontinental Terminals, LLC at 1943 Independence Parkway South, La Porte, Texas 77571 or 1030 Ethyl Road, Pasadena, Texas 77503.

*Hart v. ITC*
Second Amended Complaint

## JURISDICTION AND VENUE

5.        This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because the case is based on The Equal Pay Act, 29 U.S.C. § 206(d), Title VII, as amended, 28 U.S.C. § 2000(e) *et. seq.* Comprehensive Environmental, Response, Compensation, and Liability Act ("CERCLA") 42 U.S.C. §9610; and Solid Waste Disposal Act ("SWDA") 42 U.S.C. § 6971.  The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a)

6.        Venue is proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. §1391 because ITC committed all or a substantial portion of the unlawful employment practices in Deer Park, Harris County, Texas, located within the Southern District of Texas – Houston Division.

## NATURE OF THE CASE

7.        This case arises from ITC violating The Equal Pay Act, 29 U.S.C. § 206(d).  ITC unlawfully discriminated and retaliated against Hart because of her gender.  ITC had a practice not to treat females fairly, provide them equal opportunity for advancement or pay them the same or similarly to their male counterparts.

8.        Additionally, Hart was constructively discharged for refusing to commit an illegal act that could have subjected her to criminal penalties, which is a public policy exception to the employment at will doctrine established by the Texas Supreme Court in *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 734 (Tex. 1985).  Alternatively, ITC constructively discharged Hart for reporting a violation under CERCLA and SWDA.

## STATEMENT OF FACTS

**Equal Pay Act**

*Hart v. ITC*
Second Amended Complaint

9.        Defendant operates a large quantity storage facility in Deer Park, Texas, providing terminal services to the petrochemical industry ("ITC Deer Park").  Its field operations involve 239 tanks with a capacity of nearly 13 million barrels.  It stores hazardous materials and petrochemical liquid and gas, as well as fuel oil, bunker oil, and distillates.  ITC's facilities include multiple ship and barge docks, rail and truck access, and pipeline connections.

10.       ITC employed Hart from March 6, 1990 to November 19, 2017.

11.       ITC first employed Hart as an Environmental Lab Technician.

12.       ITC employed at least three hundred employees at ITC Deer Park.  Hart was the only ITC female field operations employee.[1]

13.       Over the years, ITC gave Hart occasional, small pay raises, but it never promoted her to management  or supervisory positions despite her repeatedly applying for promotions and other jobs for which she was imminently qualified.  ITC always promoted males to these positions although the promoted males were almost always less qualified and experienced.

14.       On or about January 5, 2015, ITC told Hart it was promoting her to the Hazardous Waste Specialist position vacated by another male employee, who was promoted to Lead Environmental Supervisor. ITC told Hart that it would not transition her to the specialist position or increase her pay (commensurate with the promotion) until she completed training her replacement and completed training for the specialist position. ITC gave both males (the man who was promoted over Hart and the man who Hart was required to train) pay raises before either completed training for their new positions.

---

[1] ITC employed other females during Hart's 28-year tenure but only in administrative capacities.

*Hart v. ITC*
Second Amended Complaint

15.     On or about March 12, 2015, Hart officially assumed her new position as Hazardous Waste Specialist, but she continued to work with Bass for purported additional training, such training being unnecessary and merely a pretext for refusing her a pay raise. Hart had backed-up the Hazardous Waste Specialist position for 12 years, substituting for the position any time the hazardous waste specialist was vacationing or sick. Moreover, Hart had more required licenses for the position than her predecessor.

16.     Finally, on or about April 28, 2015, Hart completed "training" with Bass. Although ITC had promised Hart that she would receive a raise after she completed her "training" ITC refused to give her the promised raise.

17.     Hart made multiple complaints to ITC's human resources department about gender discrimination and the unfair treatment she was receiving from Carl Holley, VP. Holley was involved in all personnel decisions for the Environmental and Safety Departments at the Deer Park facility, even though he had no expertise in handling environmental waste products. Human Resources did not conduct any investigation, nor did they take any corrective action in response to Hart's complaints. Moreover, Hart made multiple complaints to her supervisor that she was not being paid in parity with her male counterparts.

18.     In April 2017, ITC was looking for a manager for a Lead Environmental Specialist. Hart applied for the job but was denied the promotion. Hart was subsequently told by a member of the human resources department that Alice Richardson, the Director of Human Resources had said that Hart would not be promoted because Hart would have to participate in meetings with all men and "she couldn't handle it."

*Hart v. ITC*
Second Amended Complaint

19.     In June 2017, Frank Elliott, Manager/ Supervisor of the Environmental Department told Holley, that the individual who was performing as Lead Environmental Specialist was not qualified for the job.  The manager asked that the Lead be reassigned, and that Hart be made Lead. Holley denied the request, stating, "Well that's NOT going to happen."

20.     In late August or early September 2017, ITC notified the employees in the Environmental Health and Safety Department that the Environmental Supervisor position was open, and anyone interested should apply.  Hart immediately contacted ITC's Human Resources Department and asked for the job description and eligibility requirements.  The descriptions she was given did not require a college degree for the position.  After Hart asked for the application, Human Resources added the requirement that applicants have a college degree.  Hart met all the other requirements except for the "new" college degree requirement.  Hart was told she was not eligible and could not apply.

21.     In late September or early October 2017, ITC hired Brian Obermeyer for the position.  Obermeyer held no licenses and had no experience in handling hazardous waste. Obermeyer was so unqualified that Holley required Hart prepare Obermeyer's reports because he was incapable of preparing them.

22.     ITC denied Hart's vacation requests if a male employee requested vacation leave at the same time, even though Hart did not work in the same position as the male employee.  ITC consistently granted its male employee's vacation and sick days upon request.

23.     ITC denied Hart step-up pay—a temporary increase in pay rate whenever an employee fills in for another employee who is paid at a higher hourly rate.  ITC consistently paid its male employees step-up pay.

*Hart v. ITC*
Second Amended Complaint

24.      ITC either denied or severely limited Hart's overtime.  ITC consistently granted and paid its male employees overtime as needed or wanted.  Hart performed exceptionally in every position she held with ITC.  She attended numerous continuing education courses obtaining specialized certifications and licenses.  Hart was not given any increases or promoted for these achievements; however, her male counterparts received additional pay, advancement or other benefits.

25.      Male employees who Hart trained earned higher wages/salary than Hart during the period she trained them and when ITC promoted them over her.

26.      ITC's actions, and inaction, created a "boys only" club where it allowed only male employees to advance.

### *Sabine Pilot/*CERCLA/SWDA

27.      On August 25, 2017, Hurricane Harvey hit the Houston area resulting in massive flooding.  Hart was working in the Environmental lab on August 28-30, 2017.

28.      During the storm, Holley called Gerry Baquet, the Lead Environmental Operator (who was not scheduled to work) into the facility and told him to release the hazardous material being stored in ITC's tanks into the flood water.  On information and belief, Holley called Baquet in because he knew Hart would refuse to make an illegal release.

29.      Hart told Baquet that it was illegal to make a release into the flood water.  Baquet, in Hart's presence, called Holley on three occasions that evening to question his request that Baquet release the material.  Holley became angry and told him to make the release.

*Hart v. ITC*
Second Amended Complaint

30.     An intentional release of hazardous waste violates both state and federal law.  ITC was operating under Hart's license, which could make her subject to criminal and civil liability and cause her to lose her license for an unauthorized release.

31.     Hart took water samples of the outfall and pictures of the release over the three days that the release occurred.  She sent the sample to the laboratory for analysis.  During the three-day period, over a million gallons of hazardous waste was intentionally released into the flood waters by ITC.

32.     On the evening of August 30, 2017, Carl Holley came into the lab and told those working that the toxicity levels in the outflow were within acceptable levels.  Hart knew that this was untrue.  Hart had pulled multiple samples from the outflow and surrounding waters and the samples showed high levels of contamination.

30.     Within days of Holley's announcement that the toxic levels were within acceptable levels, Brent Weber, Senior Vice President of ITC and Miguel Escoto, a representative from Human Resources held meetings with each of the employees that worked in the Environmental Department.

31.     When Hart was called in, Weber told her that during the flooding there had been an inadvertent release of raw sewage.  Hart told Weber she had been present during the flooding and the release had not been of raw sewage and had not been inadvertent.  She also told him that she had tried to stop the release and Holley had expressly ordered Baquet to make the release into the flood waters.  Hart told Weber that she had pulled water samples and that after the third call to Holley, she had taken her license off the wall.

*Hart v. ITC*
Second Amended Complaint

7

32.      Weber responded that the proper report would be made to the Texas Commission on Environmental Quality ("TCEQ") and that he would let her see it.  He also told Hart that if the issue of the release ever went to court, she would be the one who would go to jail because it was her license.

33.      Although Weber had said he would let Hart review the report to the TCEQ, he never did.  Additionally, when Hart searched ITC's computer records, she was unable to locate the report in the location that such reports were normally kept.

34.      On November 8 – 9, 2017, Hart was attending fire school in San Antonio.  When she called the lab to check in, Baquet told her that an employee had accidently overfilled one of the tanks that resulted in an inadvertent release of hazardous waste.

35.      Hart told Baquet that ITC needed to remove the soil that had been contaminated. Baquet agreed but said Holley wanted them to use a fire hose to dilute the hazardous material and then vacuum up the water.

36.      Diluting and suctioning the water was not a proper way to remediate a release of hazardous waste.

37.      When Hart returned to ITC on November 10, 2017, she learned that the proper remediation had not been performed; instead, ITC had only suctioned the standing water and had not removed any of the contaminated soil.

38.      Hart called Hunter Willis, the Environmental Systems Supervisor, and told him that all of the contaminated soil needed to be removed.  Willis contacted Holley to relay Hart's comments and discuss the remediation.  Ultimately, ITC attempted to properly remediate the site (to the extent the hazardous waste had not already leeched into the soil).

*Hart v. ITC*
Second Amended Complaint

39.     Holley had previously told Hart that management blamed her for the additional cost of disposal resulting from the cleanout of the Hazardous Waste tank.

40.     Releasing hazardous waste into the flood waters during Harvey, as opposed to treating the waste, saved ITC millions of dollars.

41.     Over the years, multiple environmental managers/supervisors of ITC had resigned from ITC, citing Holley's practice of violating environmental statutes in an effort to cut costs.

42.     After Hart complained about the intentional release of hazardous waste into the flood waters during Hurricane Harvey and the failure to properly remediate the release in November 2019, Holley increased his harassing conduct towards Hart to an unbearable level.

43.     Holley instructed Hunter Willis that Hart was to copy him (Holley) on all her correspondence   Holley would bypass Hart and instruct other employees to perform tasks they were not qualified to perform and then blame Hart for their mistakes.  He would refuse to sign her reports and continually berated her.

44.     Holley's actions towards Hart were so severe that she told her supervisor, Hunter Willis, that she was going to quit.  Willis told her not to quit but to go home and he would talk with Holley.

45.     Because of Weber's threat that Hart would go to jail over the intentional release during Harvey, Hart was concerned that Holley was trying to force her to quit so that he could blame her for ITC's failures in connection with the release of hazardous material during Harvey and the failure to properly remediate the inadvertent release in November 2017.

46.     On November 17, 2017, Hart reported ITC's activities to the TCEQ.

*Hart v. ITC*
Second Amended Complaint

9

47.     On November 18, 2017, Hart went by the ITC Deer Park facility and located a copy of the report ITC filed with the TCEQ in connection with the release during Harvey.  Contrary to the facts, the report implied that the release of the hazard material was inadvertent, an oversight, or merely negligent, when in fact it was intentional.

48.     After learning that ITC had lied to her (and to TCEQ) concerning the report it filed with the TCEQ, and the overt threat that ITC would blame her for the release, Hart tendered her resignation effective November 19, 2017.

## CAUSES OF ACTION

**Violation of Equal Pay Act**

49.     Paragraphs 6 through 26 are incorporated herein by reference.

50.     ITC is an "employer" within the meaning of 29 U.S.C. § 203(d).

51.     Hart, a female employee, was paid less than male employees performing the same or similar jobs requiring similar skill, effort, and responsibility in similar working conditions. Hart received lower hourly wage or salary, overtime pay, bonuses, paid vacation and holidays, benefits, and other forms of compensation than similarly situated male employees.

52.     The acts, failures, practices and policies of ITC set forth above constitute willful discrimination with respect to salary, bonuses, and all other forms of compensation and benefits paid or provided to females versus males for substantially equal work on jobs requiring equal skill, effort and responsibility and performed under similar working conditions in violation of the Equal Pay Act ("EPA") of the Fair Labor Standards Act, 29 U.S.C. § 206(d).

**Violation of Title VII  (Sex Discrimination)**

*Hart v. ITC*
Second Amended Complaint

53.     In September 2017 Hart applied for the position of Environmental Supervisor.  The job description she was originally provided did not require a college degree.  After Hart indicated that she was interested in applying for the position, the job description was changed to require a college degree and Hart was told she was ineligible to apply.  A male candidate with less experience and who did not possess the required license was given the position.

54.     Hart was objectively the better qualified candidate and was denied the position due to her gender.

**_Sabine Pilot Wrongful Discharge_**

55.     The Texas Supreme Court has recognized a public policy exception to the employment at will doctrine for individuals that are terminated for the sole reason that they refused to perform an act that would expose them to risk of criminal prosecution.  *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 28 Tex. Sup. Ct. J. 339 (Tex. 1985).  That exception also applies when an employee resigns their employment as a result of a constructive discharge.

56.     Texas Water Code Chapter 7, Subchapter E provides for criminal penalties for allowing an unauthorized discharge of hazardous material or failing to report an unauthorized discharge.  CERCLA also imposes criminal penalties for intentional releases of hazardous waste.

57.     Hart was told that ITC had reported an "inadvertent" discharge of raw sewage into the flood waters caused by Hurricane Harvey.  Hart told Brent Weber, Senior Vice President of ITC, that she was present when the discharge occurred and it was not "accidental" or "inadvertent" and that it was not raw sewage rather it was toxic waste.  Weber threatened to implicate Hart in the criminal conduct and told her that that if the matter went to court, she would be the one who

*Hart v. ITC*
Second Amended Complaint

would go to jail because it was her license.  Hart reasonably believed that ITC would attempt to

blame her for the release.

58.     Weber ultimately told Hart that ITC would file a report notifying the TCEQ of the

discharge.  Weber told Hart that he would show her the report, however, that never happened.  The

report that she located incorrectly implied that the release was "inadvertent" and that the

contamination levels were incorrect due to an in house sampling error.  When Hart learned that a

false report connected to her license has been filed, she resigned her position.

**CERCLA/SWDA**

59.     The Employee Protection provisions of CERCLA, 42 U.S.C.A. § 9610, provides,

in part:

> No person shall fire or in any other way discriminate against, or cause to be fired
> or discriminated against, any employee or any authorized representative of
> employees by reason of the fact that such employee or representative has provided
> information to a State or to the Federal Government, filed, instituted, or caused to
> be filed or instituted any proceeding under this chapter, or has testified or is about
> to testify in any proceeding resulting from the administration or enforcement of the
> provisions of this chapter.

60.     The Employee Protection provisions of SWDA, 42 U.S.C. § 6971, provides:

> No person shall fire, or in any other way discriminate against, or cause to be fired
> or discriminated against, any employee or any authorized representative of
> employees by reason of the fact that such employee or representative has filed,
> instituted, or caused to be filed or instituted any proceeding under this chapter or
> under any applicable implementation plan, or has testified or is about to testify in
> any proceeding resulting from the administration or enforcement of the provisions
> of this chapter or of any applicable implementation plan.

60.     After Hart reported to ITC management that Holley had ordered an intentional

release of hazardous waste during Harvey, ITC, through its Senior V.P. threatened that Hart would

go to jail if the "matter ever went to court."

*Hart v. ITC*
Second Amended Complaint

12

61.     Likewise, Carl Holley, Vice President of ITC, harassed Hart to the point that she told her supervisor she was going to quit.  Although her supervisor convinced her not to quit that day, when she discovered that ITC had filed the misleading report to the TCEQ, she felt compelled to quit.

62.     Weber and Holley individually and ITC are liable discrimination under CERCLA and the SWDA.

<strong>JURY TRIAL DEMANDED</strong>

49.     Hart demands a trial by jury on all triable issues.

<strong>REQUEST FOR RELIEF</strong>

Hart respectfully requests that upon trial of this cause, grant judgment in Hart's favor and against the ITC for:

   a.  Lost wages from November 19, 2017;

   b.  compensatory damages for the difference in pay between Hart's salary and that of male employees performing equivalent work;

   c.  front pay;

   d.  liquidated damages for Defendant's willful violations of the Equal Pay Act;

   e.  mental anguish damages;

   f.  punitive damages;

   g.  attorneys' fees and costs of the suit; and

   h.  such other relief as this Court deems equitable and just.

Respectfully submitted,

**THE GREENWOOD LAW FIRM, PLLC**

*/s/ Sean Greenwood*

*Hart v. ITC*
Second Amended Complaint

Sean Greenwood
Attorney-in-Charge
State Bar No. 08408730 SDTX ID:  15015
1415 N. Loop W., Suite 1100
Houston, Texas 77008
TEL: (832) 356-1588
FAX: (832) 356-1589
   EMAIL: sean@gwoodlaw.com

   ATTORNEY FOR PLAINTIFF
   MARY HART


OF COUNSEL

Linda D. King
GORANSONKING, PLLC
State Bar No. 11455600
SDTX ID 6060
1415 N. Loop W., Suite 1100
Houston, Texas 77008
TEL: (713) 526-9200
FAX: (713) 526-9202
Email: king@goransonking.com

ATTORNEY FOR PLAINTIFF


CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the forgoing was served on the
following by ECF on February 26, 2019:

Stephen J. Quezada
Gauri D. Nautiyal
Ogletree Deakins
One Allen Center
500 Dallas St., Ste. 3000
Houston, Texas 77002

                                /s/ Linda D. King
                                   Linda D. King


*Hart v. ITC*
Second Amended Complaint